UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | | |
|---|---|---|
| ANGELA KITCHEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 0:18-cv-03-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL., Acting | ) | **& ORDER** |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

Plaintiff Angela Kitchen brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

I.

In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five,

1

whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The court's review of the Commissioner's decision is limited to an inquiry into whether or not the findings of the Commissioner are supported by substantial evidence, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the court would have resolved the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *See Tyra of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman*, 693 F.3d at 714.

Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging disability beginning June 1, 2010. (TR 177-178). The claim was denied initially and upon reconsideration. (TR 86, 87). After a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claim on October 5, 2016. (TR 22-38). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review of the ALJ's ruling. (TR 5-7). This appeal followed pursuant to 42 U.S.C. § 405(g). Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 12, 14].

Plaintiff has restricted her arguments to the issues specifically discussed below. Plaintiff's Brief (Pl.'s Br.) at 5-11. Therefore, the Court will limit its recitation of the medical evidence to that pertaining to the issues in the case and will discuss the evidence before the ALJ only with respect to those issues specifically argued by Plaintiff or to provide context.

II.

Marc Workman, M.D., has occasionally treated Plaintiff since 2013-2014 (with appointments occurring 3-4 months apart)(Tr. 392-394, 636). Dr. Workman's conservative treatment of Plaintiff has primarily consisted of prescribed medications for back pain, diabetes mellitus, anxiety/depression, and chronic obstructive

3

pulmonary disease (COPD) (Tr. 394, 604). An October 2014 MRI of Plaintiff's lumbar spine provided by Alan Cochrane, M.D., at the request of Dr. Workman showed previous posterior fusion changes at L4, L5, and S1, with appropriately positioned hardware, no post-operative complications, and no disc herniation (Tr. 435). In relation to Plaintiff's diabetes mellitus, January 2013 records indicate that she reported that her blood sugar levels were doing well (Tr. 394). However, by August 2014, Dr. Workman noted that Plaintiff was not compliant in taking her diabetes medication (Tr. 428). In January 2015, Dr. Workman noted that Plaintiff's degenerative disc disease was fairly stable (Tr. 622). In late June 2015, Plaintiff advised Dr. Workman that she was staying "very active" and "doing a lot of work in the hay fields." (Tr. 612).

Nonetheless, in a July 2016 Mental Impairment Questionnaire, Dr. Workman opined that Plaintiff had marked restriction in her activities of daily living; marked difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and had experienced three episodes of decompensation within a 12-month period, each of a least two weeks duration (Tr. 636-639). In a contemporaneous medical source statement as to Plaintiff's physical ability to perform work-related activities, he opined that Plaintiff could lift and carry 10 pounds occasionally, less than 10 pounds frequently; sit for 30 minutes at one time and a total of four hours in an 8-hour workday; stand

4

and walk for 15 minutes at one time and for a total of 2 hours in an 8-hour workday; would need the opportunity to shift at will from sitting or standing and walking; but could occasionally perform specific postural and manipulative activities. He further opined that Plaintiff would need to take an unscheduled break every hour for 10 minutes at a time before returning to work; and needed to avoid moderate exposure to operating a motor vehicle; as well as all exposure to specific environmental conditions; and that she would miss more than 4 days per month due to her alleged impairments or associated treatments (Tr. 632-634).

William E. Waltrip, M.D., performed a consultative examination of Plaintiff in September 2014 (Tr. 378-387). Dr. Waltrip's examination revealed Plaintiff exhibited no memory loss; with good expansion of the ribcage with equal aeration bilaterally; easily heard breath sounds; her lungs clear to auscultation and percussion; no loss of muscle mass or tone of extremities; normal range of motion testing, no scoliosis, and no muscle tenderness or spasm. Plaintiff also exhibited no deformity, heat, tenderness, or redness of the joints; an ability to make a fist; good grip strength; ability to perform fine manipulations without limitation; normal gait; no loss of motor strength; no loss of sensation to fine touch; ability to walk heel-to-toe and tandem; ability to perform a knee squat; ability to walk on the tips of her toes and her heels; and normal deep tendon reflexes.

Plaintiff's pulmonary function study showed very mild restrictive disease, but no significant obstructive disease. Dr. Waltrip diagnosed Plaintiff with chronic back pain with radiculopathy of the left lower extremity, noninsulin-dependent diabetes mellitus, sleep apnea, and COPD; and opined that Plaintiff was very minimally limited in her ability to walk, stand, or sit. Dr. Waltrip noted that Plaintiff did not require use of a cane or an assistive device for ambulation. Dr. Waltrip opined that Plaintiff should be able to lift objects of 20-25 pounds without limitation, with good grip and the ability to perform fine and gross manipulation (Tr. 378-387). The record reflects that Plaintiff underwent carpal tunnel release surgery on her right hand in September 2015 (Tr. 459-461).

In early September 2014, consultative psychologist, Megan Green, Psy.D., also examined Plaintiff (Tr. 388-391). Dr. Green noted that Plaintiff reported that she had a lot of social anxiety and that she did not like to go anywhere alone because she did not know what to expect. She reported daily depression, occasional crying spells, impatience, irritability, feelings of worthlessness, and trouble concentrating. However, Plaintiff reported that she was able to maintain personal hygiene, prepare meals, work on things around the house, take care of the animals, and do household shopping with her daughter. Dr. Green noted that Plaintiff exhibited full orientation; unremarkable psychomotor activity; a cooperative and friendly attitude; normal thought;

6

normal speech; no observed perceptual abnormalities; a depressed and anxious mood; appropriate affect; adequate insight and judgment; intact attention; mildly impaired concentration; and normal memory. Dr. Green provided diagnoses of an unspecified anxiety and depressive disorders and opined that Plaintiff would likely be capable of understanding, remembering, and carrying out instructions and sustaining persistence and pace; as well as adapting to change in work environments that required completion of simple, repetitive tasks (Tr. 388-391).

In November 2014, state agency physician Douglas Back, M.D., opined that Plaintiff had abilities consistent with medium exertion work (occasional lifting and carrying of 50 pounds and 25 pounds frequently); stand or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. Dr. Back opined that Plaintiff could climb ramps and stairs, but she should never climb ladders, ropes, and scaffolds. Dr. Back opined that Plaintiff could frequently balance, stoop, kneel, crouch and crawl; with no manipulative limitations and environmental restrictions of avoiding even moderate exposure to pulmonary irritants and workplace hazards (Tr. 97-100).

At her August 22, 2016 administrative hearing, Plaintiff testified that she was 51 years old and had a high school education with additional data processing training (Tr. 45). She said that she then described her past work activities including her last

7

position that she left in June 2010 (Tr. 45-47). She testified that the primary reason she was unable to work was that she worried excessively (Tr. 48). Plaintiff testified that she did not like to leave the house much but that she did some shopping (Tr. 52). She said that she passed the time by playing with her little dog, card games on her phone, bible studies, and watching TV (Tr. 53). She testified that she was able to care for her own personal needs and sometimes does housework (Tr. 54). Plaintiff testified that she had sleep apnea (but did not have a CPAP machine) and severe bladder problems (Tr. 54). She said that she had remote back surgery in 2005 but was still able to lift 20 pounds (Tr. 55-56). She testified that she had problems with her hands due to carpal tunnel (Tr. 56). Plaintiff testified that she could stand for 20 minutes at a time and walk for 10 minutes (but that it varied from day to day (Tr. 56). She said that she did not have problems sitting but that when she gets up her hips are stiff and "it takes a little bit to get moving" (Tr. 57). She also said that she experienced muscle cramps in her arms and legs (Tr. 59). Plaintiff testified that she had been subject to "a lot of surgeries" and had excessive scar tissue (Tr. 60). She also said that she had bowel problems and urinary tract infections (Tr. 61). She testified that Dr. Workman had prescribed medication for anxiety and depression that caused sleepiness (Tr. 63). Plaintiff

testified that she had lost 20 pounds in the last 6-8 months (Tr. 65).

A vocational expert (VE), Gina K. Baldwin, testified at the August 22, 2016 hearing. After determining Plaintiff's past relevant work (Tr. 67), the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience, with limitations the same as those ultimately determined by the ALJ to be those of Plaintiff. The VE testified that such an individual could not perform her past relevant work but could perform the representative unskilled light and sedentary exertion occupations of nut and bolt assembler, small parts assembler, and non-governmental mail clerk (light exertion); as well as table worker, final assembler, and weigher (sedentary exertion) (Tr. 67-68).

## III.

In her October 5, 2016 decision, the ALJ found that Plaintiff had severe impairments consisting of obesity, arthritis, carpal tunnel syndrome, degenerative disc disease, COPD, diabetes mellitus, sleep apnea, depression, and an anxiety disorder (Tr. 23; Finding No. 3), but that Plaintiff's impairments did not meet or equal the severity of a listed impairment (Tr. 24-26; Finding No. 4). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light exertion work with additional postural, manipulative, environmental and mental

limitations (Tr. 26-32; Finding No. 5), and that her complaints of disabling limitations were not entirely consistent with the medical and other evidence (Tr. 30). Finally, the ALJ found that although Plaintiff could not return to her past relevant work, there were a significant number of jobs in the national economy that Plaintiff could perform, including the representative unskilled, light exertion positions of nut and bolt assembler, small parts assembler, and non-governmental mail clerk; as well as the unskilled sedentary occupations of table worker, final assembler, and weigher (Tr. 32-34; Finding Nos. 6, 10). Thus, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act from his alleged disability onset date through the date of his decision (Tr. 34; Finding No. 11).

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to

affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

IV.

Plaintiff only presents two related and narrow unsubstantiated challenges to the ALJ's consideration of her disability claim. She argues that the ALJ did not properly consider medical source opinions and, in doing so, erred in assessing the severity of her alleged mental impairments and her RFC. Pl.'s Br. at 5-11. Plaintiff has thus waived any arguments as to any other issue not raised or argued with specificity in her brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)); *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) (unpublished) (arguments not included in the claimant's brief are waived).

Plaintiff's arguments about the ALJ's reasonable consideration of the medical opinions of record and her Step Three and RFC findings do not withstand scrutiny. The ALJ specifically

indicated that she carefully considered the total record including all relevant objective medical evidence, medical source and state agency medical consultant's opinions, and Plaintiff's subjective complaints in the making of her justifiable Step Three and RFC findings, and in determining that Plaintiff retained the capacity to perform the identified representative unskilled light and sedentary exertion occupations (Tr. 23, 26; Finding No. 5).

In the case before the Court, Plaintiff argues that the ALJ erred in not assigning "greater weight" to the opinion of treating physician, Dr. Workman, which the ALJ reasonably discounted (according the opinion "little weight"), with numerous references to both objective medical records and medical source opinions from treating and examining physicians as well as reviewing state agency medical consultants (Tr. 26-32; Finding No. 5). The overall total objective medical record (including records from Dr. Workman or other providers) and opinions from Drs. Waltrip, Green, and Back, demonstrate that Plaintiff's alleged impairments were not as limiting as the extreme limitations as opined by Dr. Workman. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (discussed in *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748-49 (6th Cir. 2006)) ("The ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall."); *see also* SSR 96-2p, 1996 WL 374188, at *5 ("the notice of determination or

decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Contrary to Plaintiff's argument, the ALJ reasonably discussed relevant medical evidence, including the reports and/or opinions from treating physicians (including Dr. Workman), consultative examining medical consultants, Drs. Waltrip and Green; as well as state agency reviewing medical consultant, Dr. Back, in reasonably determining that Plaintiff retained the RFC to perform work at the light level of exertion with additional specific postural, manipulative, environmental and mental limitations (Tr. 24-32; Finding Nos. 4, 5). *See Richardson v. Perales*, 402 U.S. at 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

V.

The real question before this Court is whether the ALJ's RFC finding was reasonable. A claimant's RFC is assessed by the ALJ between steps three and four and is "the most [a claimant] can still do despite [her] impairments." 20 C.F.R. §§ 404.1520(a)(4),

404.1545(a)(1) & (5). An ALJ is required to "assess a claimant's RFC based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. SSR 96-5p, 1996 WL 374183, at *2, 4-5 (stating that some issues, such as RFC, are not medical issues regarding the nature and severity of an individual's impairment(s) but instead administrative findings that are dispositive of a case, and thus are reserved to the Commissioner). Similarly, a claimant's subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a). Although there is a limited burden shift to the Commissioner at Step Five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing her RFC limitations.

In her October 2016 decision, the ALJ carefully and reasonably considered the entire record, including thoroughly considering medical source statements in the making of her justifiable Step Three and RFC findings (Tr. 23, 26; Finding No. 5). While Plaintiff may have had limitations that may have negatively affected her ability to work, the mere existence of impairments such as those alleged by Plaintiff, is insufficient to establish disability under the stringent standards of the Act. Instead, Plaintiff had to show that her impairments caused functional

14

limitations so severe that she was unable to engage in any substantial gainful activity for a continuous period of at least 12 months through her date last insured of September 30, 2015. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must last 12 months. *Walton*, 535 U.S. at 220.

The ALJ reasonably declined to accord Dr. Workman's opinions, as to the extent of Plaintiff's functional limitations more than "little weight," noting that treatment records (as set forth above), including those of Dr. Workman and other providers, were not consistent with Plaintiff's alleged disabling limitations (Tr. 31-32). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (An ALJ may discount a doctor's opinion when the doctor's findings are not supported by objective medical evidence or are inconsistent with the record as a whole).

Moreover, Dr. Waltrip's September 2014 consultative examination revealed that Plaintiff exhibited no memory loss; lungs clear to auscultation and percussion; no loss of muscle mass or tone of extremities; normal range of motion testing, and no muscle tenderness or spasm. Plaintiff also exhibited, inter alia, an ability to make a fist; good grip strength; ability to perform fine manipulations without limitation; normal gait; no loss of motor strength; and no loss of sensation to fine touch. Dr. Waltrip opined that Plaintiff was very minimally limited in her

15

ability to walk, stand, or sit, noting that Plaintiff did not require use of a cane or an assistive device for ambulation. Dr. Waltrip further opined that Plaintiff should be able to lift objects of 20-25 pounds without limitation, with good grip and the ability to perform fine and gross manipulations (Tr. 378-387).

Further, as noted above, the ALJ's mental RFC finding was properly supported by the September 2014 opinion of consultative examining psychologist, Dr. Green, who opined that Plaintiff would likely be capable of understanding, remembering, and carrying out instructions and sustaining persistence and pace; as well as adapting to change in work environments that required completion of simple, repetitive tasks (Tr. 388-391). *See Dyer v. Soc. Sec. Admin*, 568 F.App'x at 428 (6th Cir. 2014) (unpublished) (the opinions of consulting sources may be preferred over those of treating sources when the latter are not well supported by the record).

A review of Drs. Waltrip's and Green's objective findings as set forth in their respective September 2014 examination reports (Tr. 378-387, 388-391), reveals nothing that would be appreciably at odds with the ALJ's reasonable Step Three and RFC findings, as well as her ultimate decision that through Plaintiff's date last insured for DIB on September 30, 2015, she could perform the representative unskilled light and sedentary exertion occupations

16

as identified by the vocational expert (Tr. 26, 31, 33-34, Finding Nos. 4, 5; Tr. 378-387, 388-391). *Dyer*, 568 F.App'x at 428.

The ALJ's reasonable physical RFC finding is further buttressed by the November 2014 opinion of the state agency medical consultant, Dr. Back, who opined that Plaintiff retained the RFC for medium exertion work (Tr. 97-100). The ALJ gave Drs. Back's opinion careful consideration and appropriately accorded his opinion "some weight" but added limitations based on evidence at the hearing level including the objective findings and September 2014 opinion of consultative examining physician, Dr. Waltrip, to which she accorded "significant weight" (Tr. 31; Tr. 378-387). *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("State agency medical . . . consultants . . . are highly qualified physicians and psychologists . . . who are also experts in Social Security disability evaluation.").

Here, the total evidence of record (including both objective findings and credible opinions), as set forth above, simply does not support Plaintiff's claims of completely disabling limitations from her alleged disability onset date of June 1, 2010, through the date she was last insured for DIB on September 30, 2015. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (For applications concerning disability benefits, "the only necessary inquiry is whether the claimant was disabled prior to the expiration of her insured status.") Plaintiff does not adequately

explain why the ALJ's assessment of her functional abilities through her date last insured was unreasonable in light of the probative evidence set forth above. (Pl.'s Br. at 5-11). At this point, it is noteworthy that in late June 2015 (three months before her date last insured for DIB), Plaintiff advised Dr. Workman that she was staying "very active" and "doing a lot of work in the hay fields." (Tr. 612). *See* 20 C.F.R. §§ 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole).

Although the evidence of record might support another outcome favorable to Plaintiff, the Court must nonetheless affirm the Commissioner's decision where as here it is supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996).

VI.

The Court having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 12] be, and the same hereby is, **DENIED** and that Defendant's Motion for Summary Judgment [DE 14] be, and the same hereby is, **GRANTED.**

A separate judgment in conformity herewith shall this date be entered.

This the 20th day of September, 2018.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge